(C. D. 1370)

## August Bentkamp *v.* United States

United States Customs Court, First Division

(Decided November 7, 1951)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Mollison, Judge: The merchandise the subject of this protest consists of sea shells which were assessed with duty at the rate of 35 per centum ad valorem under the provision in paragraph 1538 of the Tariff Act of 1930 for "shells * * * engraved, cut, ornamented, or otherwise manufactured." They are claimed to be entitled to free entry under the provision in paragraph 1738 of the same act for "shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state."

At the trial of the issue the official sample was offered and received in evidence without objection as plaintiff's collective exhibit 1, and it was stipulated by counsel for the parties that the shells represented by the said exhibit had been cleaned by chemical means and that the edges had been ground. This constituted the case for the plaintiff, and on its part the defendant sought to establish by the testimony of two customs examiners that by reason of the grinding of the edges the shells had been advanced in value from the natural state.

It should be noted at this point that in view of his claim for free entry under paragraph 1738, *supra*, it was the burden of the plaintiff to establish as part of his affirmative case that the shells at bar had not been advanced in value from their value in the natural state. This the plaintiff failed to do, but the matter was placed in issue by the defendant as above stated.

There seems to be no dispute between the parties that the cleaning of the shells by chemical means was not such a manufacturing operation as would advance the shells in value from the natural state. The dispute centers around the effect, from the standpoints of manufacture and value, of the grinding operation.

There was received in evidence, over the objection of counsel for the plaintiff, a collective exhibit, consisting of three sea shells identified by one of the custom examiners as the same in all material respects as the shells of plaintiff's collective exhibit 1 except that the edges were not ground. These were marked defendant's collective exhibit 2, and it appears from the testimony of one of the examiners that a price differential of from 15 to 24 francs per dozen existed between ground and unground shells of the same size and quality as plaintiff's collective exhibit 1. As the value of the shells at bar is shown to be 4,250 francs per thousand, it appears that the price differential between ground and unground shells is quite substantial.

Counsel for the plaintiff has cited in the brief filed in his behalf a number of cases in which the subject matter was sea shells, and in some of which cases the competition of tariff provisions was the same as that in the case at bar, viz, between the provision for shells, manufactured, and that for shells, not manufactured. Such cases fall into two classes—first, those involving shells which had been subjected to a cleaning operation only, and, secondly, those involving shells which, in addition to having been cleaned, had been subjected to further operations.

In view of the fact that there is no dispute that the cleaning of the shells did not amount to such a manufacturing operation as would advance the shells in value from the natural state, no purpose can be served by a review here of the cases in the first category. However, the recently decided cases of *United States* v. *Colonial Bead Co., Inc.,* 36 C. C. P. A. (Customs) 79, C. A. D. 401, and *Thomson Trading Co.*

v. *United States*, 22 Cust. Ct. 297, Abstract 53093, contain a rather complete review of the question of the classification status of shells which have been subjected to operations beyond cleaning.

The rationale and effect of the decisions in those cases are as follows: (1) The provision for shells in the free list covers shells in their natural state—consequently, a mere advancement in value without such an advancement in condition as takes the shells out of the natural state is not sufficient to remove such shells from the free list provision, and (2) such advancement in value and/or condition as is necessary to get the shells in a marketable state is not sufficient to remove them from the free list provision.

Examining the record in the case at bar in the light of the foregoing, we find (1) that by reason of grinding of the edges the shells have been substantially advanced in value, and (2) since such shells in their natural state have rough edges, as is demonstrated by collective exhibit 2, it would appear that the grinding of the edges (which is undoubtedly a manufacturing operation, being the result of the application of labor to the article) advanced the shells from the natural state. There is here no showing that the grinding was necessary to get the shells in a marketable state, and since it appears from the record that unground shells are articles of commerce, it would appear that such showing could not be made in this case. Under these circumstances, and as it has been shown that the shells, by reason of the grinding, were advanced both in value and condition, they are removed from the free list provision.

A reading of the provisions for shells in paragraphs 1538 and 1738 shows that between them the two provisions cover shells in every condition from crude to manufactured. As the shells at bar are excluded from the free list provision, they must take classification under the dutiable provision in paragraph 1538 for "shells  *  *  * manufactured."

Judgment will therefore issue overruling the protest claim accordingly.